**UNITED STATES of America,**
**Plaintiff,**

v.

**Joseph P. MINERD, Defendant.**

**Criminal No. 99–215.**

United States District Court,
W.D. Pennsylvania.

March 19, 2002.

by means of fire and an explosive, a building which was used in interstate commerce and in an activity affecting interstate commerce, which conduct resulted in the deaths of Deana Mitts and Kayla Mitts, in violation of 18 U.S.C. § 844(i). The government has served notice that it intends to seek the death penalty if the defendant is convicted, under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*

The government has filed a Renewal of Motion for Discovery of Mental Health Evidence and for Order Compelling Defendant to Submit to Mental Health Examination (Doc. 234) and a Motion to Compel Disclosure of Mental Health Evidence and Proposed Procedures for Disclosure (Doc. 256). Each motion seeks an order permitting the defendant to be examined by the government's mental health experts in advance of trial, and, in addition, requests certain discovery as to Mr. Minerd's mental health evidence. The defendant strenuously opposes any examination before the conclusion of the guilt/innocence phase of this capital case.

Having considered the submissions of the parties and the applicable law, the government's motions will be granted in part and denied in part for the reasons set forth below.

Shaun E. Sweeney, U.S. Attorney's Office, Pittsburgh, PA, for U.S.

Shelley Stark, Fede. Public defender's Office, Pittsburgh, PA,Jay T. McCamic, McCamic & McCamic, Wheeling, WV, Richard Kammen, Gilroy, Kammen & Hill, Indianapolis, IN, for defendant.

### MEMORANDUM OPINION AND ORDER

COHILL, District Judge.

Defendant Joseph P. Minerd is charged with maliciously damaging and destroying,

### Procedural Background

The government filed its first Motion for Discovery of Mental Health Evidence and for Order Compelling Defendant to Submit to Mental Health Examination (Doc. 139) on July 7, 2001.

Minerd responded that "at this time, the defendant does not intend to offer expert testimony relating to a mental disease or defect or any other mental condition as defined by [Fed.R.Crim.P.] Rule 12.2(b)."

Doc. 166 at ¶ 1. The response further stated that "[s]hould the defendant decide to offer expert testimony relating to a mental disease or defect of any other mental condition as defined by Rule 12.2(b) appropriate notice will be provided to the Court." Doc. 166 at ¶ 4. Accordingly, we denied the government's motion by Order dated September 12, 2001. Doc. 178.

On January 22, 2002, the defendant filed a Supplemental Response to the government's earlier motion (Doc. 228). In it, Minerd informed the court and government counsel that "[t]he defense has recently obtained background information bearing upon Mr. Minerd's mental status that will almost certainly be introduced into evidence during any penalty phase . . . ." Doc. 228 at ¶ 4. Defendant further stated that preliminary information from a neuropsychologist indicated that Minerd may suffer from organic brain dysfunction, as a result of a fall and head injury in 1997. Doc. 228 at ¶ 5.

Defendant explained that "some initial testing has been done (and) additional testing is contemplated." Doc. 228 at ¶ 6. He then provided information from the initial test results.

Anticipating that the government would now renew its motion for an order compelling a mental health examination by the government's expert, counsel for the defendant requested a hearing to define the scope and circumstances of any evaluation.

The government filed its renewed motion on February 4, 2002, and we set a hearing on the matter for February 7. At that time, the parties informed the Court that they had agreed on most of the issues, and that a hearing was no longer necessary. The defendant stated that it would file notice by February 19 if it intended to use mental health evidence during any penalty phase. Counsel for the government explained which expert he expected

to retain, and both parties seemed to agree that the general procedure set forth in *United States v. Beckford*, 962 F.Supp. 748 (E.D.Va.1997) would be appropriate.

Any understanding the parties appeared to have reached had evaporated by the time the defendant filed his Combined Response and Objections to the Prosecution's Motion (Doc. 249), which generally asserts that the government is not entitled to have Minerd examined nor to discovery of any his mental health evidence, and that the procedures outlined in *Beckford* are inapplicable to this case.

The government responded on February 28, 2002, by filing a Motion to Compel Disclosure of Mental Health Evidence and Proposed Procedures for Disclosure (Doc. 256), which sets forth an alternate procedure. Minerd has filed a response objecting to said motion. (Doc. 269).

## Analysis

### (A)

■ We turn first to the government's renewed motion (Doc. 234), which requires that we decide whether Minerd can be ordered to give notice of his intent to introduce mental health testimony at any penalty phase of this trial, and whether he may be subjected to a court-ordered examination and to reciprocal discovery obligations. In making our decision, we must consider the implications on Minerd's constitutional rights under the Fifth and Sixth Amendments.

The mental health of a capital defendant is relevant to a sentencing proceeding under the framework of the FDPA. Such evidence is relevant to at least three of the statutory mitigating factors which a defendant may introduce during the sentencing phase of the trial: impaired capacity (18 U.S.C. § 3592(a)(1)); that the offense was committed under severe mental or emotional disturbance (§ 3592(a)(6)); and oth-

er factors in the defendant's background (§ 3592(a)(8)). The statutory scheme further provides that the government shall have an opportunity to rebut any evidence presented in mitigation. 18 U.S.C. § 3593(c).

The defendant correctly argues that there is no statutory authority for the specific relief the government seeks. Neither Fed.R.Crim.P. 12.2 nor 16(b)(1) applies to the penalty phase of a trial. Other courts, however, have relied upon the inherent power of the district court to provide the procedures necessary for a just and efficient resolution of the sentencing phase of a capital trial to order a mental health examination such as this, and we agree with the rationale underlying those decisions. *See, e.g. United States v. Allen,* 247 F.3d 741, 773 (8th Cir.2001) (there is no doubt that a district court has the authority to order a defendant who states that he will use evidence from his own psychiatric examination in the penalty phase of a trial to be examined by a government-selected psychiatrist before the start of the penalty phase); *United States v. Webster,* 162 F.3d 308, 338–39 (5th Cir. 1998) (acknowledging that the district court has this inherent authority furthers the goals of the FDPA); *United States v. Edelin,* 134 F.Supp.2d 45, 47–49 (D.D.C. 2001) (court has authority to order mental health examination of the defendant under 18 U.S.C. § 3593(c) if he provides notice of intent to present mental health information in support of a mitigating factor); *United States v. Beckford,* 962 F.Supp. 748, 754–57 (E.D.Va.1997) (inherent power of district courts provides sufficient authority for the imposition of notice, examination and discovery of mental health conditions in the penalty phase).

Courts addressing this issue have also reasoned that the government's ability to rebut any information presented in mitiga-tion would be "rendered meaningless" if a government-selected mental health expert were not permitted to examine the defendant. *United States v. Vest,* 905 F.Supp. 651, 653 (W.D.Mo.1995). *See, also United States v. Haworth,* 942 F.Supp. 1406, 1407–08 (D.N.M.1996); *Beckford,* 962 F.Supp. at 757.

■■■ Provided that a defendant has stated intent to produce mental health testimony at any sentencing phase, ordering an examination by a government-selected mental health expert does not violate constitutional rights. "[T]he protection afforded by the Fifth Amendment ceases when a defendant indicates that he intends to introduce mental health evidence in the penalty phase of a trial." *Beckford,* 962 F.Supp. at 761 (*citing Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987); *Savino v. Murray,* 82 F.3d 593, 604 (4th Cir.1996)). Furthermore, where a defendant makes the decision to introduce mental health evidence in the penalty phase upon advice of counsel, there is no infringement of the Sixth Amendment. *Beckford,* 962 F.Supp. at 761. *See, also Vest,* 905 F.Supp. at 653. In addition, requiring that a defendant provide notice to the government of his intent to present mental health evidence at the penalty phase does not violate his rights under the Fifth and Sixth Amendments. *Edelin,* 134 F.Supp.2d at 56 (citing *Estelle,* 451 U.S. at 454, 101 S.Ct. 1866; *Buchanan,* 483 U.S. at 402, 107 S.Ct. 2906). *See also Beckford,* 962 F.Supp. at 761–62 (requiring a defendant to declare his intent to present mental health evidence at a time certain in advance of trial does not infringe the Fifth Amendment right not to incriminate himself or Sixth Amendment right to effective assistance of counsel). We are confident that the procedure we will order, which is

essentially that set out in the *Beckford* decision and adopted by several other courts, is sufficient to safeguard Minerd's constitutional rights. A defendant's constitutional rights are not violated by a framework that places any mental health examination results under seal until the guilt phase of the trial is completed, and releases them to the prosecutor only after the defendant states with certainty that on the advice of counsel he intends to use mental health evidence to support a mitigating factor.

Minerd asserts that his circumstances are different than those addressed by the courts in *Beckford, Hall, Webster, Haworth* and *Vest,* and that those cases are distinguishable because the defendant had already been provided with government discovery, or had undergone extensive psychological testing, or had raised stark mental health issues such as mental retardation. This argument is without merit. In each of those cases, the court confronted the same opposing interests presented here: the defendant's rights under the Fifth and Sixth Amendments, the government's right under the FDPA or analogous statute to rebut any mental health testimony a defendant chooses to present at the penalty phase, and the broader interests of fairness and justice. Minerd argues strenuously that requiring a notice of intent to use such information before the trial in this matter will force him to apprise the government of his penalty phase strategy. We disagree with this conclusion. Minerd may certainly change his mind and decide not to present mental health evidence to support mitigation factors. Providing notice at this point does not prevent him from reconsidering this decision, and, should he decide not to introduce such expert testimony, the government will not have access to any report its own expert or experts have filed under seal. We also reject the defendant's argument that the

better way to handle this issue is to permit the government to seek a continuance if there should be a conviction. We are convinced that this would be detrimental to the jury and to the judicial process.

Accordingly, we will grant the government's motion (Doc. 234) insofar as it requests that we order Minerd to file a notice of intent by a date certain, and, if he wishes to present such evidence, order that he be examined by a government-selected mental health expert. Any such examination shall be conducted in accordance with the Order below.

### (B)

■ The government has also filed a Motion to Compel Disclosure of Mental Health Evidence and Proposed Procedures for Disclosure (Doc. 256), which sets forth an alternate procedure to *Beckford.* This suggested procedure follows that recently approved by the Eighth Circuit in *United States v. Allen,* 247 F.3d 741, 773–74 (8th Cir.2001). The Court of Appeals for the Third Circuit has not spoken to the issues we must decide here. However, we are convinced that the *Beckford* framework better protects Minerd's constitutional rights than the *Allen* scenario, which creates a Chinese wall within the U.S. Attorney's office and provides the results of mental health examinations to the AUSA responsible for the prosecution's penalty phase well before the conclusion of the guilt or innocence phase of trial. We will deny this motion.

### Conclusion

For the reasons set forth above, we are confident that the procedures enumerated in the accompanying Order will ensure that the government's examination of the defendant will take place only if Minerd provides notice of his intent to use mental

health evidence in mitigation during any sentencing phase of the trial. They will further ensure that the results of any examination will be disclosed only if Minerd chooses to introduce such testimony or other mental health evidence during any penalty phase. Minerd's rights under the Fifth and Sixth Amendments are not infringed by the procedure we here approve.

An appropriate Order follows:

AND NOW, to-wit, this *19th* day of March, 2002, it is hereby ORDERED that the government's Motion to Compel Disclosure of Mental Health Evidence and Proposed Procedures for Disclosure (Doc. 256) be and hereby is DENIED.

IT IS FURTHER ORDERED THAT the government's Renewal of Motion for Discovery of Mental Health Evidence and for Order Compelling Defendant to Submit to Mental Health Examination (Doc. 234) be and hereby is GRANTED IN PART AND DENIED IN PART consistent with the following:

1. Defendant shall give written notice to the government on or before noon on March 28, 2002, if he wishes to introduce testimony by a mental health professional, or evidence based on a mental health examination (both hereinafter referred to as mental health testimony) at any penalty phase. The notice shall include the name and professional qualifications of any mental health professional who may testify and a brief, general summary of the topics to be addressed that is sufficient to permit the government to determine the area in which its expert must be versed.

2. If the defendant files a notice that he plans to introduce mental health testimony at the penalty phase, the defendant shall be examined by a psychiatrist or other mental health professional selected by the government.

The government's examination shall take place not later than the commencement of jury selection in this case, which is set for April 15, 2002.

3. Any report or opinions generated by an examination of the defendant by a government expert shall be filed under seal with the Court and not discussed with the government or the defense until after the guilt phase of trial. The mental health professional conducting the examination for the government shall not discuss the examination with anyone unless and until the results of the examination are released, following the guilt phase of the trial, to counsel for the government and for the defendant.

4. Any report by the defense expert witnesses, although provided to the defense, shall also be filed under seal with the Court, and shall remain under seal and only submitted to the government under the terms of this Order, after the guilt phase of trial.

5. The results of any examination by the government's experts and the defendant's experts shall be released to the government only in the event that the jury reaches a verdict of guilty on a capital charge as to the defendant, and only after the defendant confirms his intent to offer mental health or mental condition evidence in mitigation. To that end, prior to the commencement of the penalty phase, the defendant shall file a pleading confirming or disavowing his intent to introduce mental health testimony at the penalty phase. If, in that manner, the defendant withdraws his previously-tendered notice, the results of any mental health examinations concerning the defendant will not be released to the government. In the event that the defendant confirms his intent to

introduce mental health evidence, the reports of any examinations, whether by the government or the defense expert, shall be released to government counsel immediately after the filing of the pleading confirming the earlier notice. At the same time, the report of the government's expert shall be released to counsel for the defendant.

6. Even if the defendant confirms his intent to offer mental health evidence, the defendant may withdraw a notice of intent to raise a mental health or mental defense at any time before actually introducing evidence on it, and, in that event, neither the fact of notice, nor the results or reports of any mental examinations, nor any facts disclosed only therein, shall be admissible against the defendant.

7. Failure of the defendant to provide notice or to participate in a Court-ordered examination or to confirm his first notice shall result in forfeiture of the right to present mental health testimony during the penalty phase of trial.

8. Prior to any mental health testing being conducted by any expert for the government on the defendant, the government shall provide to counsel for the defendant a list of tests its expert wishes to perform. The government's expert shall not identify more than one test for the purpose of measuring the same mental functions(s). Within three days of receiving the government's list, the defendant shall identify any such tests to which he objects, based solely on his own expert's desire to utilize the same test or a test which would be incompatible with the government's expert's use of his designated test. If a conflict exists which the government and the defense cannot resolve, the parties shall notify the Court and a hearing will be held. No mental health testing may be performed by either party until there is a final decision as to which tests are to be conducted by the government's expert. In the event of such an unresolved conflict, nothing in this paragraph shall create a preference in favor of the government or a burden on the defendant at a hearing conducted pursuant to this paragraph. The defense and the government shall also consider sharing data between the experts so that multiple administrations of the same test in a short period of time can be avoided.

9. The defendant is not required to provide the government with any of the materials supplied to defense experts other than defendant Minerd's medical records.

10. The government shall provide the defendant, within ten days of this Order, with all documents in its possession pertaining to any mental health examination performed on the defendant prior to the date of this Order. The government shall provide the defendant with any such records that it obtains during the course of the prosecution of this case, up to and including the penalty phase, not later than five days after the government receives such records.

11. The government shall provide counsel for the defendant three days notice of its intended date(s) of examination of the defendant.

12. The government will not electronically record the examination of the defendant, whether by audiotape or videotape, except with the express written consent of defense counsel.

13. No results of the government examination, and no statements or testimonial conduct of the defendant made

in the course of such examination, shall be introduced or used by the government for any purpose except to rebut expert testimony offered by the defense during the sentencing phase of the trial on the issue of the defendant's mental condition.